DECISION
This action pits the Cranston School Committee against the Mayor of the City of Cranston and the Cranston City Council. It asks this Court to decide whether the School Committee can garner an additional appropriation of approximately $4.5 million from the City Council, under the Caruolo Act, R.I.G.L. § 16-2-21.4, to cure its budget deficit for fiscal year 2007-2008, after the fact, when it anticipated a deficit early in the fiscal year and yet continued to overspend without taking any of the steps required by the Act to address its growing deficit in a timely manner. It also asks this Court to address the impact of this deficit with respect to its ongoing spending and budget for fiscal year 2008-2009.
For the reasons set forth in this Decision, this Court dismisses the Caruolo action filed by the Cranston School Committee and declines to order the City Council to appropriate additional monies of close to $4.5 million for fiscal year 2007-2008. The denial of this relief is required, as a matter of law, because the School Committee blatantly failed to comply with numerous statutory prerequisites to filing a Caruolo action. Notably, it failed to file a corrective action plan with the Mayor, City Council and Auditor General as soon as it recognized a potential or actual budget deficit, as required by law. Indeed, to date, it has never filed the statutorily required plan. This corrective action plan would have required the School Committee to address the deficit, to ensure that it spent only the minimum amounts necessary to comply with its legal obligations, under the watchful eye of the Auditor General.
In addition, it never amended its budget to conform to the City Council's lowered appropriation to it as a result of the State's decision to level fund state education aid to *Page 3 
the City of Cranston for 2007-2008, it failed to sufficiently minimize its expenses thereafter, it did not timely petition the Commissioner of Education for waivers from state regulations, it failed to timely alert the Mayor and the City Council about its expected budget deficit and it failed to timely file this Caruolo action. Instead, the School Committee simply continued to spend money until it had grossly overspent its budget, in violation of Rhode Island law. In what appears to have been an effort to try to force an increase in its level of appropriations, the School Committee did not file this action — which is designed to secure emergency court-ordered appropriations that a school committee must prove are necessary for it to meet its remaining legal obligations in that fiscal year — until the school year was almost over and its money had almost run out. The School Committee's filing of this action in the latter half of May 2008 is by far the latest Caruolo action ever filed in the Rhode Island Superior Court. By the time it filed suit, it had to ask this Court to order the City Council to appropriate to it over $4.9 million to cure its budget deficit — by far the largest sum ever requested in a Caruolo action. Its late filing ultimately required the Cranston City Council, in June 2008, to create a deficit reduction/loan account of just over $ 4.1 million for fiscal year 2007-2008 to fund payroll and employee health care expenses for the School Committee and required this Court to authorize the emergency release of over $550,000 out of its cash reserves to pay additional expenses. Thus, even before this Court could consider the propriety of its Caruolo action, the School Committee had received from these other sources the majority of the monies that it now asks this Court to order appropriated.
These failings on the part of the School Committee also require this Court to grant the Mayor relief under his counterclaim and complaint for declaratory and injunctive *Page 4 
relief and mandamus. This Court orders the School Committee to file a corrective action plan forthwith, pursuant to R.I.G.L. § 16-2-9, to address the deficit for fiscal year 2007-2008. That corrective action plan must outline specifically how the School Committee intends to repay the loan of approximately $4.1 million from the City Council to help it address its budget deficit. It also must detail a mechanism to augment its cash reserves by approximately $550,000.00 — monies that this Court recently authorized to be expended for unpaid expenses due to the deficit.
As the School Committee's budget for fiscal year 2008-2009 is based on an improper budget reconciliation line item of approximately 4.9 million, similar to the faulty budget reconciliation number in the budget for fiscal year 2007-2008, its budget for this fiscal year is now running a deficit; as a result, the School Committee is also ordered to submit a corrective action plan forthwith, pursuant to § 16-2-9, to address that deficit. This Court will reserve decision on quantifying the maintenance of effort in the School Committee's 2008-2009 budget (which arguably could include funds above those appropriated in 2007-2008 in order to comply with law, regulation and contract) and the statutory spending cap applicable to that budget, subject to the filing of the requisite corrective action plans, completion of the parties' joint financial and program audit for fiscal year 2008-2009 and further proceedings in this case. This Court also will hold in abeyance, subject to the same conditions, the defendants' request for a court-ordered freeze on spending, hiring and contracting and the appointment of a Special Master to oversee the fiscal operation of the Cranston School District.
This Court cautions the School Committee, however, to rein in its future spending and to ensure that it expends only those sums minimally required to operate in *Page 5 
compliance with law, regulation and contract — subject to any amounts that the City Council decides to appropriate, in excess of those minimal amounts, to provide the students in the Cranston schools with the quality education that they deserve. It encourages the Mayor and the City Council to assist in solving the School Committee's budget crisis in a way that will ensure that it has sufficient funds to meet its legal obligations and that will do the least harm to the education of the students in the Cranston School District.
 I. Facts and Procedural History
On February 28, 2007, the Cranston School Committee asked the Cranston City Council to appropriate $129,865,082 for its fiscal year 2007-2008 budget. The lion share of its budget (at least 85%) is to cover personnel. On May 9, 2007, the City Council appropriated $126,395,975 — $3,469,107 less than the School Committee requested. This total appropriation included $85,413,637 from direct city revenues, $36,648,338 from anticipated state school aid, and 4,334,000 from "federal and miscellaneous" sources. (Deft's Ex. O). On June 19, 2007, in response, the School Committee voted to amend its budget to conform to the appropriation by the City Council. Thomas E. Sweeney, a consultant hired by the School Committee, testified at trial that as early as April 2007, he projected that an appropriation of $126,395,975 would lead to a deficit for the 2007-2008 fiscal year.
On February 1, 2007, Rhode Island Commissioner of Education, Peter McWalters, had sent a letter to all superintendents in Rhode Island warning them that they should anticipate the level funding of state education aid and that they thus should *Page 6 
budget according to their share of 2006-2007 state aid. Notwithstanding this warning, the School Committee based its budget request, and the City Council made its initial appropriation to the School Committee, based on an assumed increase in state aid of over $1 million. On June 27, 2007, however, the Rhode Island Department of Education notified the School Committee that it would level fund the schools for fiscal year 2007-2008, meaning that the City of Cranston would receive only $35,580,911 in state education aid, as opposed to the anticipated amount of $36,648,338 on which the City Council based its prior appropriation. Consequently, on July 24, 2007, the City Council further reduced its appropriation to the School Committee to $125,328,548. The School Committee did not amend its budget to reflect this reduction in funding, as required by § 16-2-21(b).[1] Mr. Sweeney testified that he estimated as early as October 2007 that the School Committee would run a deficit for the 2007-2008 school year of approximately $3.5 million.
On or about November 14, 2007, after it had incurred most of its expenses for the ensuing school year, the School Committee revised it budget to include a "budget reconciliation" line item of a negativeexpense in the amount of $1,651,202. The School Committee's Chief Financial Officer, Joseph A. Balducci, testified that this negative amount reflected additional funds that the School Committee expected the City Council to appropriate as a result of its contemplated "Caruolo action." This Court received no *Page 7 
explanation at trial as to how this deficit grew so large between the time of the School Committee's appropriation and its fall accounting.
Thereafter, on November 30, 2007, almost two months after Mr. Sweeney testified that he was aware that there would be a $3.5 million budget deficit, the School Committee, by way of a letter from Superintendent M. Richard Scherza to School employees, issued a freeze on all spending except essential and emergency operational items. From the testimony at trial, it appears that by the time the Superintendent issued the freeze, the School Department had made the vast majority of its purchases for fiscal year 2007-2008. Also, testimony at trial reveals that the freeze was not enforced in earnest until near the end of the school year.
In addition, prior to submitting its fiscal year 2007-2008 budget request, and before the March 1, 2007 deadline to lay off teachers under the applicable collective bargaining agreement, the School Committee laid off 59 teachers and administrators. Before the start of the 2007-2008 school year, however, 44 of these teachers were recalled; 11 were not recalled, 4 resigned and one retired. The lay offs were fewer in number than that allowed under the collective bargaining agreement. The School Committee, following the advice of Chairman Michael A. Traficante, made no effort to obtain concessions from any of the employee unions during fiscal year 2007-2008 to assist it with its budget deficit. This Court has no evidence that additional concessions or lay offs or expense reductions would not have been possible or that they would have compromised the School Committee's ability to meet it legal obligations. Indeed, it appears that the School Committee's objective, from the time the City Council rejected its original budget request in early 2007 and it hired Sweeney and Edge as consultants, *Page 8 
was not to reduce expenses to comport with its minimal legal obligations, but to file a Caruolo action — as late as possible — to secure the monies to which it believed it was entitled from the inception of the budget process.
Thereafter, on December 6, 2007, the School Committee voted to direct the Superintendent to seek waivers from certain Rhode Island education regulations from the Commissioner of Education as a precursor to filing a Caruolo action. That waiver request, submitted on December 26, 2007, sought permission to eliminate all non-special education transportation for the last quarter of the school year and sought the same waiver given to the Providence School system allowing it to increase special education class size. The School Committee also requested that the Department of Education pay for second semester special education tuition and $1,234,190 toward the education of students at the Cranston Area Career Technical Center. The request for waivers was essentially a formality, as the Superintendent did not expect it to be granted. On January 15, 2008, the Commissioner denied the waiver request.
Following this denial, on January 22, 2008, the School Committee submitted a written request to the City Council, pursuant to the Caruolo Act, seeking an increase in funding of $3,839,190 to meet projected expenses. The School Committee stated in its request that if the City Council failed to respond within 15 days, it would deem it to have denied the request. This request was not accompanied by an itemization of the areas where the actual expenses exceeded the budget, and it was based on the School Committee's original request for 126,395,975 and not the City Council's reduced appropriation to it, after the level funding of state aid, of $125,328,548. This Court received no explanation at trial as to why the deficit more than doubled in two months. *Page 9 
After the School Committee submitted its request to the City Council, it asserts that it had numerous meetings with agents of the City Council and the Mayor to attempt to resolve its budget problems short of filing a Caruolo action. The defendants spent much of this time attempting to verify the School Committee's claimed deficit. It was not until April 29, 2008, however, that the School Committee made a presentation regarding the deficit to the City Council. At this meeting, the School Committee requested $4,931,704 in additional appropriations — an even greater amount than its January 22, 2008 request and three times the amount of its anticipated deficit in the fall of 2007. Again, at trial, this Court received no explanation for this staggering growth in the deficit.
The City Council passed a resolution on May 3, 2008, asking the Mayor to seek a writ of mandamus requiring the School Committee to operate within the appropriated 2007-2008 budget. In response, on May 13, 2008, the School Committee filed suit under the Caruolo Act (C.A. PC08-3474), naming as defendants the Cranston City Council, Mayor Michael Napolitano and Director of Finance Corsino Delgado. Before filing suit, it never filed a corrective action plan under § 16-2-9. Thereafter, in accordance with R.I.G.L. § 16-9-1, the Cranston City Treasurer took over the finances of the School Department and informed the School Committee that any monies distributed beyond the appropriated amount would be charged to the School Department's deficit account.
The School Committee's Caruolo Act complaint alleges that it "lacks the ability to operate the schools for the 2007-2008 school year in accordance with law, regulation and contract while maintaining a balanced budget within the appropriation made to it in 2007 and/or in accordance with the provisions of R.I.G.L. §§ 16-2-21, 16-2-23, 16-7-23 *Page 10 
and 16-7-24." Complaint ¶ 15. The School Committee claims that the City Council underfunded it by $4,931,704, and it seeks that amount in its Caruolo action.
This litigation does not stem from the first Caruolo suit between the parties. In fiscal year 2003-2004, the School Committee sought an additional $3,200,700 from the City Council under its provisions.See School Committee of the City of Cranston v. Cranston CityCouncil, 2004 R.I. Super Lexis, 52 (R.I.Super. 2004). On March 1, 2003, the School Committee requested a budget of $110,338,382. The city appropriated $105,718,285. Id at 4. Instead of having its budget conform to the appropriation, the School Committee reduced it to $108,919,055.Id. After its requests under the Caruolo Act to the Commissioner for alternatives or waivers and its subsequent request to the City Council for additional funds were denied, the School Committee reduced its budget to conform to the city appropriation of $105,718,285 by making numerous budget cuts, including the elimination of extra-curricular activities. Id. at 5. The School Committee then filed a Caruolo suit in September 2003 seeking an additional $3,200,770. Id. at 4-5. The trial judge attached little credibility to the School Committee's witnesses and instead relied heavily on the City's Council's experts at that time, Thomas Sweeney and Walter Edge. The Court agreed with Messrs. Sweeney's and Edge's testimony that the School Committee could recognize $1,642,719 in add-backs and reductions in 23 individual line items totaling $5,407,707 in savings. Id. at 12. The Court found that the School Committee had actually been over funded by $564,218 and denied the School Committee's requested relief. Id.
As a result of the fiscal year 2003-2004 Caruolo suit, the School Committee had a fiscal and program audit conducted, termed the "Abrahams Report." The Abrahams *Page 11 
Report made a series of recommendations. Based on the evidence at trial, those recommendations, if implemented, could saved the Cranston School Committee approximately $12,000,000. These recommendations included; holding department heads more accountable for managing their budget, requiring cessation of the practice of adjusting line items without adequate explanation, conforming the budget to meet the recommended budget practices of the Government Finance Officers Association, consolidating of elementary schools and undertaking competitive bidding for food and transportation services. Although in possession of these recommendations for over four years, the School Committee has not fully implemented them. In fact, Mr. Sweeney, whose job it was in as early as the spring of 2007 to determine how the School Committee could realize savings, did not even review the report. Moreover, Messrs Sweeney and Edge conducted a "Caruolo Audit" — as they called it — that did not look to root out inefficiencies or determine the minimum requirements under the School Committee's various mandates. Instead, their "Caruolo Audit" simply justified individual line items by demonstrating that they were used to fulfill certain obligations under the laws, regulations, and contracts binding the School Committee.
In response to the School Committee filing the Caruolo suit, the Mayor filed a series of preliminary motions. First, the Mayor moved to have the affidavits of the School Committee's expert consultants, Thomas E. Sweeney and Walter E. Edge, stricken on the grounds that they did not contain competent or relevant evidence in that they were based on legal conclusions by non-lawyers. The Mayor also moved to have Sweeney and Edge precluded from testifying on grounds of conflict of interest because they represented the City of Cranston in a prior Caruolo action involving the School Committee in 2003. See *Page 12 Cranston Sch. Comm. v. City of Cranston, 2004 R.I. Super. Lexis 52 (R.I.Super. 2004) (C.A. No. PC-03-5110). The Mayor, joined by the City Council, also moved to dismiss the Caruolo action under Rule 12(b)(1) for a lack of subject matter jurisdiction and Rule 12(b)(6) for a failure to state a claim upon which relief may be granted. The City Council joined in this motion. The defendants based their motion to dismiss on the following arguments:
 1) The School Committee did not amend its budget to reflect the July 24, 2007 reduced appropriation, nor did it conform its spending to this appropriated amount.
 2) The School Committee did not timely or substantively apply to the Commissioner of Education for waivers or alternatives to state regulations.
 3) The School Committee did not timely request an additional appropriation from the City Council within 10 days of receiving a response from the Commissioner of Education.
 4) The School Committee did not timely bring this action in Superior Court to seek an additional appropriation.
 5) The School Committee has unclean hands because it failed to comply with its statutory obligations under R.I.G.L. §§ 16-2-9, 16-2-11 and 16-2-18 to operate the school department without incurring a deficit, nor did it comply with its statutory duties under §§ 16-2-9 and 16-2-11 to submit a corrective action plan once it was clear that a deficit would occur.
The School Committee counters by arguing that it was not necessary for it to amend its budget to reflect the City Council's second reduction in funding due to the level funding of state education aid; it is only required under the Caruolo Act toadhere to the appropriated budget. The School Committee argues that it adhered to the appropriated budget because it filed this action before the monies allotted by the City Council ran out and because it took many cost reduction steps in an attempt to comply with the reduced budget. Moreover, the School Committee contends that it could not amend its budget to *Page 13 
reflect the reduced appropriation, as it needed those additional monies to comply with its mandates and contractual obligations.
The School Committee further asserts that there are no specific deadlines for filing a request for waivers such that it timely petitioned the Commissioner of Education. The reason for his denial, the School Committee argues, is that it is difficult to identify exclusively regulatory items that may be waived to save money. In fact, the School Committee posits, the Commissioner has never granted a waiver in similar circumstances.
The School Committee also avers that it timely petitioned the City Council for additional monies on January 22, 2008, only seven days after the Commissioner's denial of its waiver request. According to the School Committee, it was the City Council that delayed this action by waiting until May 3, 2008 to discuss, and in effect deny, the appropriation request. The School Committee contends that it should not be punished for the City Council's delay in deciding the School Committee's request for additional appropriations.
After additional argument on June 17, 2008, this Court denied the Mayor's pre-trial motions, without prejudice to their being renewed at trial on an expanded factual record. Interestingly, the hearing on these motions was the last this Court heard from the City Council. The City Council has not answered the School Committee's complaint nor has it participated in the numerous proceedings before this Court. At the close of plaintiff's case and the evidence at trial, the Mayor renewed his motion to dismiss in the form of a motion for judgment as a matter of law, pursuant to Rule 52(c). *Page 14 
At about the same time it filed its Caruolo action to seek additional appropriations for fiscal year 2007-2008, the School Committee submitted its budget for fiscal year 2008-2009 to the City Council. Sometime prior to May 15, 2008, the School Committee requested $132,810,730 from the City Council for fiscal year 2008-2009, including $93,884,319 in the form of a direct city appropriation. Sometime after May 15, 2008, the City Council level-funded the School Committee for fiscal year 2008-2009 by appropriating $125,340,048 to it, which included a direct city appropriation of $86,413,637. In response, on June 16, 2007, the School Committee adopted a budget based on the appropriation. However, despite the appearance of a balanced budget, just as with the 2007-2008 "Budget Reconciliation" negative expense line item of $1,651,202, the adopted 2008-2009 budget contains the same negative expense line item, on page 191, except now in the amount of $4,931,704 (Pltf's Ex. F).
On June 23, 2008, upon the Mayor's request and advice, the City Council passed a resolution directing Finance Director Delgado to create a deficit reduction/loan account into which the City Council appropriated $4,138,106 to pay outstanding School Committee bills for fiscal year 2007-2008. The City Council specifically created the account to pay the School Committee's outstanding invoices and obligations; it did not consider the loan to be an appropriation nor did it agree to factor it into the City's maintenance of effort[2] for following year.See Deft's Ex. R. As a result of its filing of the Caruolo action, at the time of the creation of this account and pursuant to § 16-9-1, the *Page 15 
City Director of Finance was charged with managing the School Committee's finances. The record does not reveal that the School Committee had any part in the creation of this deficit reduction/loan account nor does it appear that there are any agreements or understandings in place for the repayment of these monies.
The Mayor answered the School Committee's Caruolo Act complaint and asserted counterclaims on July 3, 2008. On June 16, 2008, the Mayor also sued the School Committee in a second action (C.A. No. PC08-4133). The Mayor's counterclaims seeking equitable relief in the original action are in part duplicated in his subsequent suit. In counts I and II of his counterclaim and counts I and II in his complaint, which concern fiscal year 2007-2008, the Mayor asserts that the School Committee knowingly incurred a deficit for that fiscal year. In counts III and IV of his complaint, which concern fiscal year 2008-2009, the Mayor asserts that the School Committee is knowingly going to be in deficit position for this fiscal year. He alleges that those actions violate §§ 16-2-9,16-2-18 and 16-2-21, which require school committees to maintain a balanced budget and not incur a deficit. As such, the Mayor seeks a mandatory injunction and a writ of mandamus requiring the School Committee to meet and prepare an appropriate corrective action plan to cure the deficits for both the 2007-2008 and 2008-2009 fiscal years, pursuant to §§ 16-2-9 and 16-2-11, and to refrain from entering into any new contracts, hiring new employees or making any other expenditure unless necessary to comply with State or Federal mandates and contractual obligations.
In addition, in count III of the his counterclaim, the Mayor seeks a declaration that because the City Council appropriated $84,513,637 to the School Committee for fiscal year 2006-2007, the maximum the City Council may appropriate to the School *Page 16 
Committee for fiscal year 2007-2008, pursuant to the "cap statute" codified in § 16-2-21(d)(i), [3] is $88,950,602. In count V of the his complaint, the Mayor seeks a similar declaration that, based on the City Council's fiscal year 2007-2008 appropriation of $85,413,637, the maximum amount the City Council may directly appropriate for fiscal year 2008-2009, pursuant to the cap statute in § 16-2-21(d)(ii), [4] is $89,684,318. Lastly, in count VI of his complaint, the Mayor seeks a writ of mandamus requiring the School Committee, pursuant to §§ 16-2-9
and 16-2-11, to prepare an amended budget for fiscal year 2008-2009 that conforms to the City Council's appropriation. This Court has no record of the School Committee answering either the Mayor's counterclaims or the Mayor's complaint.
On July 7, 2008 the Mayor moved to consolidate the two pending cases under Rule 42(a) on the grounds that the two proceedings contain common questions of law and fact; namely, whether the City Council appropriated to the School Committee legally sufficient funds. The School Committee objected and moved to bifurcate the Mayor's counterclaims and complaint from its Caruolo Act complaint. It argued that the Caruolo Act is a stand-alone statute requiring expedited litigation and that combining its Caruolo Act complaint with the Mayor's counterclaim and complaint would lead to unnecessary *Page 17 
delay. On July 10, 2008, this Court granted the Mayor's motion to consolidate for the limited purpose of hearing testimony and considering legal argument relevant to both actions and denied the School Committee's motion to bifurcate the Mayor's counterclaim and complaint from its Caruolo action. The Court reserved the right to rule first on the Caruolo action before addressing the Mayor's counterclaim and complaint.
Just before trial, the School Committee filed an emergency motion for a writ of mandamus, asking this Court to compel the City Council to authorize the payment of a series of unpaid expenses from fiscal year 2007-2008, attached to the motion, from its cash reserves from fiscal year 2007-2008 and from the 2008-2009 operating budget. The expenses ranged from bills due and owing for health care coverage for School Department employees, utilities and the School Committee's attorneys in this action. After argument, this Court granted the motion in part and denied it in part. It issued a writ of mandamus requiring the City Council to disburse immediately to the School Committee the $559,143 that it had in 2007-2008 cash reserves, but it denied the School Committee the use of any 2008-2009 operating funds to pay 2007-2008 expenses. The Court acknowledged that this payment would not be an admission by any party as to whether the payment would violate any statute, charter provision or ordinance nor would the authorization of payment be considered an admission by the Defendants for any purpose in the instant actions. Moreover, court authorization of these payments would not have an impact on any subsequent order of this Court regarding the allocation of expenses.
Before trial, both parties filed pre-trial memoranda. In its pre-trial memorandum, the School Committee further responded to the issues raised in the Defendants' original *Page 18 
motion to dismiss, stating that the evidence would prove that it was justified in not conforming its expenditures to the funds appropriated by the City Council, as contemplated by the Caruolo Act, because that would have prevented it from providing for State and federally mandated programs and services and complying with its contractual obligations. The School Committee argued that the evidence would show that its waiver requests to the Commissioner were reasonable, but that they were not granted because the Commissioner's power to grant waivers, or his perception of his powers, is limited.
The School Committee then discussed this Court's role in Caruolo Act cases. It contends that this Court does not serve as a super-school committee nor does it make informed educational judgments as to the appropriate mix of programs or staffing necessary to carry out required programs; instead, the Court's sole role in a Caruolo action is to determine whether the School Committee has proven that it lacks the ability to run the schools for a particular year, within the previously authorized appropriation, while adhering to its mandates and contractual obligations. Next, the School Committee argues that § 16-2-21(d), known as the "cap statute," does not prevent this Court from rendering an appropriate Caruolo Act judgment in excess of the cap because it requires only that the Court "consider" the cap but does not mandate adherence to that cap. Finally, the School Committee asserts that, under the Caruolo Act, the Court is prohibited from establishing a maintenance of effort figure for fiscal year 2008-2009 because it is limited to the issue of the proper appropriation for fiscal year 2007-2008 only, and it cannot infringe on possible Caruolo Act claims for subsequent years. *Page 19 
The Mayor's pre-trial memorandum does not disagree with the School Committee's analysis concerning this Court's role in Caruolo Act proceedings. The Mayor also takes the position that the School Committee has the burden of establishing the amount necessary to balance the budget while complying with its mandates and contractual obligations. The Mayor next contends that this Court must establish a maintenance of effort base for fiscal year 2008-2009 because the Caruolo action was brought so late in the year and quantifying that base will affect the legality of the fiscal year 2008-2009 budget. The Mayor also makes the legal argument that the "cap statute" in § 16-2-21(d) mandates that this Court's award in the Caruolo action may not exceed the 5.25% increase cap from base year 2006-2007. Finally, the Mayor asks this Court this Court to order the School Committee to submit a balanced budget for fiscal year 2008-2009 and submit corrective action plans to address the budget deficit for fiscal year 2007-2008 and the anticipated budget deficit for fiscal year 2008-2009. Accordingly, the Mayor takes the position that the $4,138,106 loan from the City Council should be considered a debt of the School Committee that must be cured by the filing creation of a corrective action plan pursuant to §§ 16-2-9 and16-2-11.
At trial, this Court received extensive expert and lay testimony and admitted into evidence numerous exhibits. The parties agreed, based on the collaboration of their experts that the amount of the School Committee's deficit (and the amount it now seeks in additional appropriations) is $4,496,344. The School Committee alleges that this is the amount that was required, in addition to the prior 2007-2008 appropriation of $125,328,548, for it to comply with its legal obligations under law, regulation and *Page 20 
contract. After consideration of these memoranda and the extensive testimony and evidence at trial, this Decision follows.
 II. Analysis A. School Funding, the Caruolo Act and its Statutory Prerequisites
To determine the City's funding obligations, this Court must start with an overview of the Rhode Island education system. The Rhode Island Constitution vests the responsibility to educate the citizens of Rhode Island in the General Assembly. R.I. Const. Art. XII § 1. The General Assembly has delegated this duty to municipal and regional school committees under § 16-2-9(a), stating: "The entire care, control, and management of all public school interests of the several cities and towns shall be vested in the school committees of the several cities and towns." The school committees act as educational agents of the State.School Committee of the Town of Johnston v. Santilli, 892 A.2d 123 (R.I. 2006); Foster-Glocester Reg'l School Building Committee v. Sette, 2008 R.I. Super. Lexis 6 (R.I.Super. 2008).
Notwithstanding this broad authority to oversee and operate their schools, the autonomy of school committees is limited in several important ways. A school committee is obligated to follow state and federal law and regulations and the Basic Education Program promulgated by the Board of Regents for Elementary and Secondary Education under § 16-7-24 (the "BEP"). See § 16-7-24 ("The board of regents for elementary and secondary education shall adopt regulations for determining the basic education program."); see also School Committee ofthe Town of Portsmouth v. Town of *Page 21 Portsmouth, 2007 R.I. Super Lexis 43, 10 (R.I.Super. 2007) (the BEP represents "another set of mandates which school committees must adhere to while operating their school system"). It must also meet the requirements of its collective bargaining agreements. Exeter-WestGreenwich Regional School District v. Exeter-West Greenwich Teachers'Association, 489 A.2d 1010, 1020 (R.I. 1985) (". . . budgets submitted by school committees to the appropriating authority to fund collective bargaining agreements and to fund mandated programs and services must be funded."). Additionally, a School Committee is not a taxing authority and instead must rely on its host municipality for appropriations "adequate to meet mandates from the federal and state governments, educational regulations, and executed contracts." School Committee ofthe Town of Portsmouth, 2007 R.I. Super Lexis 43; see also
§ 16-7-24.[5] A municipality must appropriate a budget sufficient to "support the basic program and all other approved programs shared by the state." § 16-7-23.
School committees are statutorily forbidden from operating at a deficit. See R.I.G.L. §§ 16-2-9, [6] 16-2-18[7], 16-2-21[8],16-9-1.[9] As soon as the school *Page 22 
committee discovers that an expenditure or obligation is actually or potentially in excess of the amount budgeted or that its revenue is or is expected to be less than the amount budgeted, it must file a statement with the city council and mayor indicating the amount and cause of the actual or potential over expenditure, over obligation or revenue deficiency. § 16-2-9(f).[10] The school committee must include in that statement, and the superintendent must recommend to the school committee and file with the city treasurer and Mayor, a corrective action plan for curing the budget deficit; the plan must be approved by the Auditor General. Id.; *Page 23 see also §§ 16-2-11, [11] 16-2-18, [12] . 16-9-1.[13] The purpose of a corrective action plan is to ensure that steps are taken immediately, under the auspices of the Auditor General, to ensure that any further expenditures by the School Committee are the minimum necessary to comply with law, regulation, or contract. As a school committee cannot be expected to spend less than those sums necessary to meet its legal obligations, [14] its corrective action plan must describe the actual on-the-ground *Page 24 
changes that it intends to make to attempt to achieve a balanced budget and must clearly justify the need for any spending in excess of its budget to comport with law, regulation and contract.
The Caruolo Act then tells a school committee how to seek additional funds where it lacks sufficient monies to maintain a balanced budget while meeting its legal obligations. It provides, in pertinent part, as follows:
 (a) Notwithstanding any provision of the general or public laws to the contrary, whenever a city, town, or regional school committee determines that its budget is insufficient to comply with the provisions of § 16-2-21, 16-7-23, or 16-7-24, the city, town, or regional school committee shall adhere to the appropriated budget . . . The chairperson of the . . . school committee . . . shall be required to petition the commissioner, in writing, to seek alternatives for the district to comply with state regulations and/or provide waivers to state regulations and, in particular, those which are more restrictive than federal regulations that allow the school committee to operate with a balanced budget . . . The commissioner must consider alternatives for districts to comply with regulations and/or provide waivers to regulations in order that the school committee may operate with a balanced budget within the previously authorized appropriation. In the petition to the commissioner, the school committee shall be required to identify the alternatives to meet regulations and/or identify the waivers it seeks in order to provide the commissioner with the revised budget which allows it to have a balanced budget within the previously authorized appropriation. The commissioner shall respond within fifteen (15) calendar days from the date of the written petition from the school committee. If the commissioner does not approve of the alternatives to meet regulations or the waivers from regulations which are sought by the school committee, or if the commissioner does not approve of the modified expenditure plan submitted by the school committee, then: (1) within ten (10) days of receiving the commissioner's response, the school committee may submit a written request to the city or town council for the council of the municipality to decide whether to increase the appropriation for schools to meet expenditures. The decision to increase any appropriations shall be conducted pursuant to the local charter or the public law controlling the approval of appropriations within the municipality . . . *Page 25 
 (b) In the event of a negative vote by the appropriating authority, the school committee shall have the right to seek additional appropriations by bringing an action in the superior court for the county of Providence and shall be required to demonstrate that the school committee lacks the ability to adequately run the schools for that school year with a balanced budget within the previously authorized appropriation or in accordance with §§ 16-2-21, 16-2-23, 16-7-23, and 16-7-24. In no event shall any court order obtained by the school committee have force and effect for any period longer than the fiscal year for which the litigation is brought. Any action filed pursuant to this section shall be set down for a hearing at the earliest possible time and shall be given precedence over all matters except older matters of the same character. The court shall render its decision within thirty (30) days of the close of the hearings. Upon the bringing of an action in the superior court by the school committee to increase appropriations, the chief executive officer of the municipality, or in the case of a regional school district the chief elected officials from each of the member municipalities, shall cause to have a financial and program audit of the school department conducted by the auditor general, the bureau of audits, or a certified public accounting firm qualified in program audits. The results of the audit shall be made public upon completion and paid for by the school committee to the state or private certified public accounting firm.[15]
§ 16-2-21.4 (emphasis added).
Under the Act, the School Committee is required to adhere to its appropriated budget while taking other measures to secure additional funding. The first step it must take is to petition the Commissioner of Education to seek alternatives for it to comply *Page 26 
with state regulations or waivers from these regulations (particularly state regulations that are more restrictive than federal regulations). If the Commissioner denies that request or does not approve of a modified expenditure plan submitted by the school committee, the school committee then may ask the municipality for an increased appropriation. If that request is denied, the school committee may file a Caruolo action in Superior Court and "shall be required to demonstrate that the school committee lacks the ability to adequately run the schools for that school year with a balanced budget within the previously authorized appropriation or in accordance with §§ 16-2-21, 16-2-23, 16-7-23, and16-7-24." Id.
The Caruolo Act requires a school committee to look prospectively and to prove the minimum amount of funding required to carry the school district through the remainder of the school year with a balanced budget without violating law, regulation or contract. See Coventry SchoolCommittee v. Coventry Town Council, 1996 R.I. Super. Lexis 24, 27 (R.I.Super. 1996). Indeed, "the School Committee has the burden to show that it lacks sufficient funding to run its schools in a manner that comports with various state, federal and contractual mandates." School Committeeof the Town of Portsmouth v. Town of Portsmouth, 2007 R.I. Super. Lexis 11. This minimum amount of funding is confined to what is mandated by the BEP and contract as "must haves;" all other requests are "nice to haves" that may not be funded in a Caruolo action. School Committee v.Coventry Town Council, 1996 R.I. Super Lexis at 27.
While no Rhode Island court has discussed the legal effect on a Caruolo action of a school committee's failure to adhere to its statutory obligations, and although the School Committee contends that the Caruolo Act is a stand alone statute, it is clear to this *Page 27 
Court that the Act was intended to be a piece in the larger framework defining municipal and school committee financial obligations. SeeExeter West-Greenwich, 489 A.2d at 1018 ("If this Court is to effectuate this legislative purpose, we cannot look [to one act or another] in a vacuum . . . we shall look at other legislation that is in parimaterial with the act before us."). Filing a Caruolo action to obtain additional funding is the last step after a school committee has passed a budget to comport with the monies appropriated to it, filed a corrective action plan as to an anticipated budget deficit, attempted to reduce expenditures to the minimum level required to ensure compliance with law, regulation and contract, sought and been denied waivers from state laws that it cannot afford, attempted unsuccessfully to secure an additional appropriation from the municipality to meet its legal obligations and determined that it cannot adhere to its mandates and contracts without the court compelling that additional appropriation.
A Caruolo action must be brought in a timely manner from when a school committee discovers that it cannot operate in a non-deficit position while complying with its mandates and contracts. The purpose of a Caruolo action is to enable a school committee to obtain additional funds to meet its minimum mandates "while satisfying the school committee's obligation to maintain a balanced budget." Ross Beil v. TheChariho School Committee, 667 A.2d 1259 (R.I. 1995); See also R.IG.L. § 16-2-18 (". . in no fiscal year shall a deficit be permitted for school operations"). A Caruolo action is not intended to be used as an end of the year budget plug to fix a deficit that the school committee had anticipated for months before the school year began. Instead, a Caruolo action is intended to aid a school immediately after it determines that it will not be able to *Page 28 
meet its mandates without incurring a deficit, in order to finish out the school year with a balanced budget.
Such intent is evidenced by the Caruolo Act's requirement that a program audit be completed for use by the court upon the filing of a Caruolo action. See School Committee of the Town of Portsmouth v. Townof Portsmouth, 2007 R.I. Super. Lexis 43 (R.I.Super. 2007) (The program audit was "intended to assist the Court in its role in deciding Caruolo matters"). A financial and program audit enables a court, in conjunction with evidence introduced by the school committee, to determine what the minimum level of funds necessary for the school committee to comply with law, regulation and contract. Moreover, the Caruolo Act's requirement that "the court shall render its decision within thirty (30) days of the close of the hearings" demonstrates that the Legislature envisioned that such a suit typically would be brought in the early part of the school year and would be handled expeditiously by the court.
Practical considerations also require that a Caruolo action be brought in an expeditious manner after the discovery of a deficit that on-the-ground corrective action cannot close and that its review is prospective in nature. Not having a timeliness requirement could enable a school committee to knowingly incur a deficit by funding "nice to haves" while delaying payment for its "must haves," only to then come to court seeking funding for the "must haves" under the Caruolo Act after its coffers were empty. The Legislature has shown an abhorrence to such school deficits. See § 16-2-9(d) ("Notwithstanding any provisions of the general laws to the contrary . . . The school committee of each school district shall be responsible for maintaining a school budget which does not result in a debt"). Accordingly, it is contrary to the intent of the *Page 29 
Legislature to allow a school committee to knowingly incur an end of the year deficit where corrective action can no longer be taken, only to be appropriated additional funds under the Caruolo Act.
A timeliness requirement also requires school committees to budget properly and responsibly, so that they know upon receiving their municipal appropriation, absent unforeseen expenses, whether the amount appropriated is sufficient for them to comply with the minimum requirements of law, regulation and contract. A municipality is only required to appropriate a sum sufficient for a school committee to comply with its minimum obligations under law, regulation and contract.See §§ 16-2-21, 16-7-15 16-7-23 16-7-24. In addition, school committees must amend their budget if the amount "recommended or requested" by the school committee is either less or more than the amount appropriated by the municipality at the financial meeting. § 16-2-21(d). Thus, the funding statutes contemplate that both the municipality and the school committee will be cognizant of the minimum appropriation required by law at the time of the appropriation so that either sufficient funds are appropriated or the stage is knowingly set for the filing of a Caruolo action immediately thereafter.
 B) The Cranston School Committee's Caruolo Action
Here, the evidence shows that the School Committee woefully failed to comply with the statutory prerequisites to filing a Caruolo Act. The Cranston School Committee knew it would be operating with a deficit when it failed to secure its requested appropriation from the City Council in the spring of 2007. Instead of dealing with that reality, it hired consultants. They were not retained to perform a financial and program audit that could have assisted the School Committee in determining how the School *Page 30 
District could be operated most efficiently and cost effectively. They did not even review the extensive program audit that had been performed in connection with the filing of the School Committee's 2003 Caruolo action. That review would have revealed numerous cost saving steps that the School Committee should have taken long prior to 2007 and could have taken in 2007 to reduce its deficit. They did not quantify the minimum amount of money necessary for the School Committee to comply with law, regulation and contract. Instead, they were retained to help it pave the way for the filing of this Caruolo action to obtain all of the monies that the City Council declined to appropriate. They accepted the existing budget as the starting point and proceeded to justify all of its line items as required by law.
With knowledge of this anticipated deficit, the School Committee did not even revise its budget, as required by statute, to conform to the City Council's revised appropriation in July 2007 due to the level funding of state aid. It simply added that sum to the amount that it would seek in its Caruolo action. It rehired most of the personnel it had targeted for lay off in the winter of 2007.
The consultants projected a $3.5 million deficit for the 2007-2008 fiscal year as early as October 2007. The School Committee stood by as the projected on-paper deficit grew and grew: $1,651,202 as of November 14, 2007, $3,839,190 as of January 22, 2008 and $4,931,704 as of May 17, 2008. It never prepared a corrective action plan under the auspices of the Auditor General and it never timely notified the City of the deficit, as required by statute. See §§ 16-2-9 16-2-11. It thus failed to take the steps, early in the year, to ensure that it was doing all that it could to live within its means while complying with its legal obligations. It deprived the City and the Auditor General of the opportunity *Page 31 
to exercise financial oversight over the School Committee and to intervene to help stave off a budget crisis. At trial, it failed to explain this exponential growth in its deficit or to convince this Court that such growth was the mere by-product of having to comply with its mandates and contracts.
If the School Committee had developed an appropriate corrective action plan as required by statute — wherein the School Committee would have proactively attempted to discover ways to live within its budget — it may have discovered significant potential cost savings that would have prevented the bringing of a Caruolo action. Moreover, filing a corrective action plan in April 2007, when there was the first indication of a deficit, or in October 2007, when the School Committee knew for sure there was going to be a deficit, would have gotten the School Committee, City Council and Auditor General talking and working together early on in the process and might have prevented the filing of this suit. A Caruolo action is a last resort for a school committee, to be used only after diligence and a good faith attempt to reduce costs without violating mandates and contracts has failed.
In addition, the School Committee was not proactive about preventing and curing such a deficit because it failed to institute a spending freeze for all non-essential items until November 30, 2007,months after Mr. Sweeney had projected a sizeable deficit. It took no action to monitor compliance with that freeze or enforce its terms. In fact, it did not acknowledge until the late spring of 2008 that there had been substantial non-compliance with its freeze request and it was not until that time that it implemented a more rigorous procedure to enforce the freeze. It also decided to keep programs running that were clearly in excess of its mandates. Mr. Sweeney testified that there were only *Page 32 
two programs not mandated, the EPIC program for gifted and talented students at a cost of $520,198, and the "Junior ROTC" program at a cost of $134,198. In addition, School Committee Chairman Traficante testified that the "Strings and Band" program, costing $557,095, was not mandated by the BEP. It is true that the savings from eliminating these programs may not have been equal to their full cost because there may have been residual expenses associated with their elimination. Yet, such action to reduce costs through altering non-mandated programs should have been taken before a Caruolo Act was brought or otherwise it should have been established to the satisfaction of the City and the Auditor General that such elimination would not have been cost effective or would have violated law. Not doing so demonstrates that the School Committee did not attempt to reduce its budget to the minimum necessary to comply with its mandates and contracts before filing this Caruolo Action.
Of all the prior Caruolo suits, this is the latest one ever filed.[16] Here, the School Committee knew that it would operate at a deficit as early as April 2007, and much more definitively in October 2007. It took the position that most of its programs were mandated by law, regulation and contract, and as such, no changes in its budget could have been made.[17] In the face of such a view, the School Committee should have filed a corrective action plan immediately, sought the appropriate waivers from state mandates *Page 33 
from the Commissioner, requested additional funds from the City Council and then immediately filed suit under the Caruolo Act if that request was denied. It knew how to take early action, as evidenced by its Caruolo action in 2003. It cannot pin the blame for its untimely action on the Mayor and the City Council, as they needed time to investigate a deficit of which they had not been apprised in a timely manner. Moreover, the law imposes the obligation for immediate filing of the Caruolo action on the School Committee, not other City officials, and it even alerted the City Council that it would assume its request for increased appropriations had been denied if it did not hear from it School Committee within 15 days.
Instead, the School Committee waited until weeks before the close of the school year to file its Caruolo action. Such a failure to file a corrective action plan and the late filing of suit left no time for performance of a "Financial and Program Audit" or its equivalent to determine if there could be any savings that could be realized in order to balance the budget for 2007-2008 while complying with mandates and contracts. Instead, with no time left to discover and implement corrective action, the School Committee finished the year with a significant deficit — the exact scenario the Caruolo Act was created to prevent. This Court cannot even imagine the dire circumstances in which the School Committee would find itself today if the City Council had not created the deficit reduction/loan account of over $4.1 million to assist it in meeting its payroll and paying employee health care expenses at year end or if this Court had not ordered the payment of bills out of cash reserves. Cleary, the Legislature did not intend the Caruolo Act to be used to enable the reckless practice of knowingly incurring a deficit, waiting until the end *Page 34 
of the year on the verge of the money running out, and then demanding more funds from the host municipality.
It is clear to this Court that the Cranston School Committee has been unable to properly forecast and account for its expenses in order to determine the level of funding required to operate its schools. Initially, upon the City Council's July 24, 2007 appropriation reduction because of level funded state aid, the School Committee, at its November 14, 2007 meeting, determined that it would require an additional $1,651,202 to run its schools. That number then increased to $3,839,190 when the School Committee requested additional funding from the City on January 22, 2008. Thereafter, on May 17, 2008, upon the filing of this suit, that number increased once again to $4,931,704 in additional appropriations. There was also testimony that this number was as high as $3,500,000 in early October 2007. The School Committee did not put forth any evidence of unforeseen expenses that would lead to such fluctuations. Instead, they appear to be the result of poor budgeting and accounting practices. Clearly, the Caruolo Act could not have been intended as a firewall to allow school committees to return for more funding in order to correct such poor oversight and the willful incurring of a significant deficit, in violation of numerous governing statutes. See §§ 16-2-9(d), 16-2-11(c), 16-2-18, 16-2-21(b) and 16-9-1.
For all of these reasons, the School Committee's Caruolo action must be dismissed as a matter of law. *Page 35 
 C) Maintenance of Effort and the Statutory Cap
Finally, the Mayor asks this Court to establish a maintenance of effort figure for fiscal year 2008-2009.[18] In addition, the Mayor seeks a declaration that, due to the 2006-2007 appropriation of $84,513,637, and pursuant to § 16-2-21(d)(i), [19] the most that the School Committee can appropriate in 2007 and 2008 (including capping any award under the Caruolo Act) is $88,950,602. The Mayor also seeks a declaration that based, on the City's 2007-2008 appropriation of $85,413,637, the maximum amount the City may directly appropriate for fiscal year 2008-2009, pursuant to § 16-2-21(d)(ii), [20] is $89,684,318.
This Court declines, at this juncture, to establish a maintenance of effort figure for fiscal year 2008-2009. The Caruolo Act states in part: "In no event shall any court order obtained by the school committee have force and effect for any period longer than the fiscal year for which the litigation is brought." § 16-2-21.4(b). Interpreting this section, and discussing the mootness of a claim as it related to maintenance of effort, the Supreme Court stated; "by its very terms, the scope of any court order entered under the Caruolo *Page 36 
Act is limited to one year . . ." School Committee of the Town ofJohnston v. Santilli, 912 A.2d 941, 943 (R.I. 2007). In addition, the maintenance of effort provision provides that "A community which experiences a non-reoccurring expenditure for its schools may deduct the non-reoccurring expenditure in computing its maintenance of effort." § 16-7-23.
It is clear to this Court that any award under a Caruolo action is a non-reoccurring expense because it only deals prospectively with a school committee's ability to get through the school year. By its very nature, a Caruolo proceeding does not look back to prior expenses to determine whether they were in excess of the minimums required to comply with its mandates and contractual obligations. It is not a full analysis of the legally required minimums for the entire school year. Instead, a Caruolo action is a remedy to fix either an insufficient appropriation,or, a School Committee's mismanagement of a legally sufficient budget (because a School Committee may still be awarded additional funds even though it had originally been appropriated an amount sufficient to comply with its obligations for the entire year but has spent funds on "nice to haves"). Thus, if the Mayor or the School Committee would like to establish a maintenance of effort figure in excess of the original appropriation, the question to be answered is whether the amount appropriated by the City Council for fiscal year 2007-2008 was sufficient for the School Committee to operate its schools with a balanced budget while meeting the minimum requirements under law, regulation and contract. The quantum of proof at such a hearing must be the type of evidence a "financial and program audit" would reveal. Only with that evidence can a determination be made of a municipality's minimum funding obligations. *Page 37 
Similarly, the statutory caps on spending increases are advisory and are not affected by, nor do they control, Caruolo Act judgments. The base underlying the cap should not be controlled by a Caruolo Act award because in such a proceeding, a municipality may be required to appropriate a sum in excess if that which was sufficient for the School Committee to operate its school while adhering to its mandates and contracts for the entire year. The base should only be raised in excess of the original appropriation where there is a determination that the required minimum appropriation in the base year was insufficient for a school committee to meet its minimum obligations for that year. Thus, similar to establishing a maintenance of effort figure, the base underlying the cap can only be increased from the original appropriation by a determination that that appropriation was not legally sufficient for the School Committee to meet its obligations with a balanced budgetfor the entire year.
Moreover, a Caruolo Act is not constrained by the statutory caps. This Court "shall consider the percentage caps" in any Caruolo judgment.See Section 16-2-21. On its face, this language is non-mandatory. The purpose of the caps is clearly to limit the property taxes a municipality may levy. However, school committees are statutorily required to operate in a non-deficit position and also must meet minimum educational requirements. Thus, this Court must be able to fashion relief that is in excess of the statutory caps because if it were not able to so, a successful Caruolo action might still not provide enough funds for a school committee to comply with its mandates and contracts without running a deficit; this is a result which has been clearly prohibited by the Legislature. See Sections 16-2-9, 16-2-18 and 16-2-21. *Page 38 
As such, the Court declines to reach the question of the maintenance of effort or statutory cap applicable to the 2008-2009 budget, subject to the filing of the requisite corrective action plans, completion of the planned joint financial and program audit for fiscal year 2008-2009, any other similar analysis for fiscal year 2007-2008 and further proceedings in this action.
 III. Conclusion
For the reasons set forth in this Decision, the School Committee's Caruolo Act complaint in C.A. No. PC08-3474 is denied and dismissed as a matter of law for its failure to comply with the statutory prerequisites to filing a timely and proper action under the Caruolo Act.
Counts I and II of the Mayor's counterclaim in C.A. No. PC08-3474, and counts I and II of the Mayor's complaint in C.A. No. PC08-4133, are granted in part and denied in part. The School Committee is ordered to file forthwith a corrective action plan under R.I.G.L. § 16-2-9 to cure its deficit for fiscal year 2007-2008. It is not enjoined, at this juncture, from entering into contracts, hiring personnel or paying expenses, subject to its filing of a corrective action plan, performing a financial and program audit for fiscal year 2008-2009 and further proceedings in this Court. This Court declines to reach the Mayor's request for a declaration in count III of his counterclaim regarding compliance with the cap on appropriations for fiscal year 2007-2008, as resolution of that issue is not necessary in light of this Court's dismissal of the School Committee's Caruolo action.
Counts III, IV and VI in the Mayor's complaint are granted so far as they require the School Committee to file forthwith an amended budget and a corrective action plan *Page 39 
for fiscal year 2008-2009 because the school committee is currently in a deficit position for this fiscal year. For the same reasons that the court will not enjoin the School Committee from entering into contracts, hiring personnel, or paying expenses in counts I and II of the Mayor's counterclaim and complaint, it will also not order the same for counts III and IV of the Mayor's complaint, subject to further proceedings in this Court.
Finally, this Court holds in abeyance Count V of the Mayor's complaint, subject to the filing of the requisite corrective action plans, completion of the planned joint financial and program audit for fiscal year 2008-2009, any other similar analysis for fiscal year 2007-2008 and further proceedings in this action.
[1] Rhode Island General Laws § 16-2-21(b) states:
 If the amount appropriated by the town meeting, the city or town council, or budget referendum is either more or less than the amount recommended and requested by the school committee, the school committee shall, within thirty (30) days after the appropriation is made, amend its estimates and recommendations so that expenses are no greater than the total of all revenue appropriated by the state or town or provided for public schools under the care, control, and management of the school committee.
[2] R.I.G.L. § 16-7-23 defines a municipality's maintenance of effort obligation as follows:
 Each community shall contribute local funds to its school committee in an amount not less than its local contribution for schools in the previous fiscal year . . . A community which experiences a non-reoccurring expenditure for its schools may deduct the non-reoccurring expenditure in computing its maintenance of effort.
[3] Rhode Island General Laws § 16-2-21(d)(i) states, in pertinent part, as follows:
 (d) Notwithstanding any provision of the general or public laws to the contrary: (i) the budget adopted and presented by any school committee for the fiscal year 2008 shall not propose the appropriation of municipal funds (exclusive of state and federal aid) in excess of one hundred five and one-quarter percent (105.25%) of the total of municipal funds appropriated by the city or town council for school purposes for fiscal year 2007.
[4] R.I.G.L. § 16-2-21(d)(ii) states, in pertinent part, as follows:
 d) Notwithstanding any provision of the general or public laws to the contrary: . . . (ii) the budget adopted and presented by any school committee for the fiscal year 2009 shall not propose the appropriation of municipal funds (exclusive of state and federal aid) in excess of one hundred five percent (105%) of the total of municipal funds appropriated by the city or town council for school purposes for fiscal year 2008
[5] Section 16-7-24 provides, in pertinent part, as follows:
 Each community shall appropriate or otherwise make available to the school committee for approved school expenditures during each school year, to be expended under the direction and supervision of the school committee of that community, an amount, which, together with state education aid and federal aid: (1) shall be not less than the costs of the basic program during the reference year, (2) plus the costs in the reference year of all optional programs shared by the state;
[6] Rhode Island General Laws § 16-2-9 provides, in pertinent part, as follows:
 (d) The School Committee of each district shall be responsible for maintaining a school budget that does not result in debt.
 (e) The school committee shall, within thirty (30) days after the close of the first and second quarters of the state's fiscal year, adopt a budget as may be necessary to enable it to operate without incurring a debt, as described in subsection (d).
[7] Rhode Island General Laws § 16-2-18 provides, in pertinent part, as follows
 . . . expenses shall not in any fiscal year exceed the total of all revenue appropriated by the state or city or town or otherwise for the public schools under the care, control, and management of the school committee. . . .in no fiscal year shall a deficit be permitted for school operations.
[8] Rhode Island General Laws § 16-2-21 provides, in pertinent part, as follows:
 (b) If the amount appropriated by the town meeting, the city or town council, or budget referendum is either more or less than the amount recommended and requested by the school committee, the school committee shall, within thirty (30) days after the appropriation is made, amend its estimates and recommendations so that expenses are no greater than the total of all revenue appropriated by the state or town or provided for public schools under the care, control, and management of the school committee.
 (c) Only a school budget in which total expenses are less than or equal to appropriations and revenues shall be considered an adopted school budget.
[9] Rhode Island General Laws § 16-9-1 provides, in pertinent part, as follows:
 . . . school expenditures, encumbrances, and accruals shall not, in any fiscal year, exceed the total revenue appropriated for public schools in the town.
[10] That statute provided, in pertinent part, as follows:
 (f) In the event that any obligation, encumbrance, or expenditure by a superintendent of schools or a school committee is in excess of the amount budgeted or that any revenue is less than the amount budgeted, the school committee shall within five (5) working days of its discovery of potential or actual over expenditure or revenue deficiency submit a written statement of the amount of and cause for the over obligation or over expenditure or revenue deficiency to the city or town council president and any other person who by local charter or statute serves as the city or town's executive officer; the statement shall further include a statement of the school committee's plan for corrective actions necessary to meet the requirements of subsection (d). The plan shall be approved by the auditor general.
[11] Rhode Island General Laws § 16-2-11 provides, in pertinent part, as follows
 (c) If at any time during the fiscal year the superintendent of schools determines, or is notified by the city or town chief charter officer or treasurer, that the estimated school expenses may exceed all revenue appropriated by the state or city or town or otherwise for public schools in the city or town, the superintendent of schools shall recommend to the school committee and shall, in order to provide for continuous regular public school operations consistent with the requirements of § 16-2-2
without regard to financial conditions, subsequently report to the city or town treasurer and chief charter officer what action will be taken to prevent an excess of expenditures, encumbrances, and accruals over revenues for public schools in the city or town."
[12] Rhode Island General Laws § 16-2-18 provides, in pertinent part, as follows
 . . . expenses shall not in any fiscal year exceed the total of all revenue appropriated by the state or city or town or otherwise for the public schools under the care, control, and management of the school committee. If, in any fiscal year a school committee is notified that estimated expenses may exceed total available appropriations, the school committee shall adopt and implement a plan to maintain a balanced school budget, which plan shall provide for continuous regular public school operations consistent with the requirements of § 16-2-2; provided, that in no fiscal year shall a deficit be permitted for school operations.
[13] Rhode Island General Laws § 16-9-1 provides, in pertinent part, as follows:
 . . . school expenditures, encumbrances, and accruals shall not, in any fiscal year, exceed the total revenue appropriated for public schools in the town. Should the town treasurer, finance director, or other charter officer charged with general responsibility for town finances, or the school financial officer, estimate that actual public school expenditures, encumbrances, and accruals may exceed the total revenue appropriated for the expenditures in any fiscal year, the school committee, the superintendent of schools, and the chief elected officials of the town shall be notified. Purchase orders or financial commitments shall not be authorized even on the order of the school committee unless it can be proven that there will not be an excess of expenditures, encumbrances, and accruals over revenues. Nothing contained in this section shall be construed to prohibit a school committee from negotiating and contracting with school employees and teachers for services to be rendered in the ensuing fiscal years pursuant to chapters 9.3 and 9.4 of title 28.
[14] See School Committee of the Town of Johnston v. Santilli, 2005 R.I. Super at 10 ("To literally require that [a school committee] only spend consistent with [a legally insufficient] appropriation would suggest that the School Committee must act in violation of law before it can maintain jurisdiction to request that the Court recognize its pre-existing legal obligations. Such an interpretation would lead to an absurd circularity that cannot have been contemplated by the Caruolo Act").
[15] On July 5, 2008, after the filing of these actions, an amended version of § 16-2-21.4 became law. Section 16-2-21.4 provides in pertinent part:
 Upon the bringing of an action in the superior court by the school committee to increase appropriations, the chief executive officer of the municipality, or in the case of a regional school district the chief elected officials from each of the member municipalities, shall cause to have a financial and performance audit in compliance with the generally acceptable governmental auditing standards of the school department conducted by the auditor general, the bureau of audits, or a certified public accounting firm qualified in performance audits.
The 2008 amendment now requires a financial and performance audit be conducted, instead of a financial and program audit, and now the audit must be in conformance with generally acceptable governmental auditing standards.
[16] Cranston School Committee v. City of Cranston, 2004, R.I. Super Lexis 52 (R.I. Super 2004) (Caruolo suit was filed in the September of the budget year in question.); Coventry School Committee v. CoventryTown Council, 1996 R.I. Super. Lexis 24 (R.I. Super 1996) (Caruolo Suit was filed in November of the budget year in question.) School Committeeof the Town of Johnston v. Santilli, 2005 R.I. Super. Lexis 63 (R.I.Super. 2005) (It appears that the Caruolo suit was filed in December of the budget year in question); School Committee of the Town of Portsmouthv. Town of Portsmouth, 2007 R.I. Super. Lexis 43 (The suit was filed sometime between November 1, 2006 and December 31, 2006 of the budget year in question).
[17] The Court clearly doubts the veracity of such a statement. It does not do so because it questions the character of the witnesses, it does so because the only way to responsibly come to such a conclusion is by conducting a financial and program audit. The "Caruolo Audit" used here just associates expenditures to mandates and contracts, it does not state whether those expenses are the minimums that could meet those mandates.
[18] R.I.G.L. § 16-7-23 states in part; "Each community shall contribute local funds to its school committee in an amount not less than its local contribution for schools in the previous fiscal year . . . A community which experiences a non-reoccurring expenditure for its schools may deduct the non-reoccurring expenditure in computing its maintenance of effort."
[19] R.I.G.L. § 16-2-21(d)(i) states in part:
 d) Notwithstanding any provision of the general or public laws to the contrary: (i) the budget adopted and presented by any school committee for the fiscal year 2008 shall not propose the appropriation of municipal funds (exclusive of state and federal aid) in excess of one hundred five and one-quarter percent (105.25%) of the total of municipal funds appropriated by the city or town council for school purposes for fiscal year 2007;
[20] R.I.G.L. § 16-2-21(d)(ii) states in part:
 d) Notwithstanding any provision of the general or public laws to the contrary:
 ii) the budget adopted and presented by any school committee for the fiscal year 2009 shall not propose the appropriation of municipal funds (exclusive of state and federal aid) in excess of one hundred five percent (105%) of the total of municipal funds appropriated by the city or town council for school purposes for fiscal year 2008